OPINION OF THE COURT
John T. Casey, J.
The petitioner, as the designated beneficiary of her deceased son, Michael J. Kelly, seeks to compel the respondent retire *150 ment system to pay her the death benefits provided in section 512 (subd b, par 2) of the Education Law.
During his life the decedent was a teacher in the Deer Park Union Free School District. On September 24, 1976 he applied for and was granted sick leave status. When his earned time was exhausted he sought to borrow additional sick leave and was granted 59 additional days which began on March 4, 1977 and terminated May 20, 1977. From a cause other than the illness for which he sought leave, Michael J. Kelly died on April 21, 1978.
According to the statute (Education Law, § 512, subd b) the death benefit applied for, "shall be payable upon the death of a member who dies before the effective date of his retirement [as happened herein], and was in service upon which his membership was based when he died [not applicable herein] or was on the payroll in such service and paid within a period of 12 months prior to his death” (emphasis supplied).
"Service”, as relevant, is defined in subdivision 19 of section 501 of the Education Law as follows: " 'Service’ shall mean actual teaching or supervision by the teacher during regular school hours of the day * * * Leave of absence with pay granted by the employer may be considered service under regulations prescribed by the retirement board.”
The issue, therefore, is whether the "additionally borrowed sick leave time” and the compensation that the decedent received therefor can be considered "leave of absence with pay” as provided in subdivision 19 of section 501 of the Education Law.
Conceding this to be the issue, the respondent argues that "borrowed sick leave time” differs from "leave of absence with pay” because the former must be repaid by the teacher either in money or by deducting the borrowed time from future allowable sick leave if the teacher returns to employment. This attempted distinction is, in this court’s opinion, artificial and arbitrary. Statutorily "a leave of absence with pay” being included in the definition of "service” (Education Law, § 501, subd 19) the crucial question is whether the decedent can be considered to have been on "a leave of absence with pay” when the only compensation that he received within 12 months of his death was for the sick leave time that he had been allowed to borrow. Although the term "leave of absence” is not statutorily defined, it is a general term that includes, in this court’s opinion, all forms of interrupted teaching employ *151 ment such as a leave of absence for teaching in foreign countries and in other states, territories and school districts (see Education Law, § 3005); a leave of absence for teaching in a college or university (see Education Law, § 3005-a); and, more importantly for this proceeding, a leave of absence for personal illness (see Education law, § 3005-b). Any interrupted teaching service with permission of the employer where the teacher has the right to return to his teaching position because his position has not been terminated and because he has not been discharged or retired would qualify as a "leave of absence” and whether the teacher is on "earned” or "borrowed” sick time is beside the point. If on April 21, 1978 Michael J. Kelly had not died, but rather was cured of the illness that necessitated his sick leave and desired to return to his teaching position, which he had the right to do, then the time that he had spent on "sick leave” would be considered a "leave of absence” regardless of whether or not he was on "earned” or "borrowed” sick leave time. He was required to make application for borrowed time and was granted the additional 59 days which kept him on the payroll in active status with his employer’s permission, and this fortifies the opinion that he was on "leave of absence” during that time.
Having so concluded, the consideration of whether such leave of absence was "with pay” and whether he was paid within a period of 12 months prior to his death remains. A pay stub covering a pay period through April 22, 1977 has been submitted showing that the decedent received compensation within 12 months of his death, and however characterized, this compensation was based on the amount of the decedent’s salary and was directly attributable to his employment. In that sense such compensation must be considered "pay”.
It follows, therefore, that the decedent was on the payroll in such service and paid within a period of 12 months prior to his death and the petitioner, as his named beneficiary, qualifies for the death benefit prescribed in section 512 (subd b, par 2) of the Education Law.
Whether the death benefit must be reduced by the borrowed sick leave time is a question not presently before the court. It is contended that the contract of employment between the teachers and the board so provides. If so, it should be a mere mathematical computation to deduct from the death benefit the value of the borrowed sick time or to make claim therefor *152 against the decedent’s estate, if a dispute as to entitlement arises.
The petitioner’s relief is granted in accordance with this opinion.